Case No. 25-11030

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

# UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

V.

# NORMAN TERRY MOSES,
*Defendant-Appellant.*

On Direct Appeal from the United States District Court
for the Northern District of Texas
Dallas Division

# APPELLANT'S INITIAL BRIEF

JASON D. HAWKINS
FEDERAL PUBLIC DEFENDER

s/ *Maria Gabriela Vega*
M. GABRIELA VEGA
ASSISTANT FEDERAL PUBLIC DEFENDER
Tex. Bar No. 24084014
525 S. Griffin St., Ste. 629
Dallas, TX 75202
Phone 214.767.2746
Fax 214.767.2776
gabriela_vega@fd.org
*Counsel for Norman Terry Moses*

## CERTIFICATE OF INTERESTED PERSONS

I certify that the following listed persons and entities have an interest in the outcome of this case. These representations are made so that the Judges of this Court may evaluate possible disqualification or recusal.

**District Judge:**   The Honorable Brantley Starr

**Appellant:**   Norman Terry Moses

**Federal Public Defender
Northern District of Texas:**   Jason D. Hawkins

**Defense Counsel:**   Maria Gabriela Vega
Mitch Alan Monthie

**United States Attorney
Northern District of Texas:**   Ryan Raybould

**Assistant U.S. Attorneys:**   Gail Hayworth
Claire Elise Demers

*s/ Maria Gabriela Vega*
M. GABRIELA VEGA

## STATEMENT REGARDING ORAL ARGUMENT

Norman Terry Moses requests oral argument. The district court erroneously found that Moses's failure to retreat from his own residence defeated Moses's claim to self-defense. Further, the district court selected its revocation sentence based on this erroneous conclusion. Oral argument may aid the Court with navigating the facts presented at the revocation hearing and when analyzing how the error affected Moses's substantial rights.

# TABLE OF CONTENTS

Certificate of Interested Persons ..............................................................ii

Statement Regarding Oral Argument ..................................................... iii

Table of Contents..................................................................................iv

Table of Authorities ..............................................................................vi

Statement of Jurisdiction.......................................................................1

Issue Presented for Review ....................................................................2

Statement of the Case ...........................................................................3

    I.      Moses struggled to comply with his conditions of release. ..........3

    II.    U.S. Probation sought to revoke Moses after he was
arrested on May 21, 2025, for an alleged assault against
his sister. ......................................................................................4

    III.   Moses disputed the unlawful assault, and he invoked his
right to a jury trial on the question. ............................................5

    IV.   The court conducted the factfinding and found that Moses
violated solely because he failed to retreat from his home..........6

    V.    The court sentenced Moses to 20 months because of the
May 21, 2025 incident.................................................................9

Summary of the Argument ...................................................................11

Argument .............................................................................................13

I.   The district court plainly and reversibly erred by imposing a duty to retreat on Moses. ............................................................... 13

   A.   Plain-error review applies. ..................................................... 13

   B.   The district court erred by imposing on Moses a duty to retreat contrary to Tex. Penal Code § 9.31(e) & (f). ................. 14

   C.   The error affected Moses's substantial rights. ......................... 17

   D.   The error warrants correction. ................................................ 18

II.  The district court erroneously denied Moses a jury trial. .......... 19

   A.   De novo review applies. ........................................................... 19

   B.   Moses was entitled to a jury trial on whether he committed a crime. ............................................................... 20

Conclusion ................................................................................................ 23

Certificate of Service ............................................................................... 24

Certificate of Compliance ........................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Caetano v. Massachusetts,*
577 U.S. 411 (2016)...............................................................21

*Molina-Martinez v. United States,*
578 U.S. 189 (2016)...............................................................17

*Morrissey v. Brewer,*
408 U.S. 471 (1972)...............................................................21

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen,*
597 U.S. 1 (2022)...................................................................21

*Rosales-Mireles v. United States,*
585 U.S. 129 (2018).........................................................18, 19

*United States v. Aderholt,*
87 F.3d 740 (5th Cir. 1996)..................................................16

*United States v. Castro-Alfonso,*
841 F.3d 292 (5th Cir. 2016).................................................17

*United States v. Cavin,*
39 F.3d 1299 (5th Cir. 1994).................................................19

*United States v. Diaz,*
637 F.3d 592 (5th Cir. 2011).................................................14

*United States v. Garza-De La Cruz,*
16 F.4th 1213 (5th Cir. 2021) ..............................................12

*United States v. Gonzalez-Rodriguez,*
621 F.3d 354 (5th Cir. 2010).................................................17

*United States v. Guidry,*
456 F.3d 493 (5th Cir. 2006).................................................20

*United States v. Hatley,*
   717 F. App'x 457 (5th Cir. 2018) ........................................................ 17

*United States v. Hinson,*
   429 F.3d 114 (5th Cir. 2005) .................................................... 11, 19

*United States v. Hott,*
   866 F.3d 618 (5th Cir. 2017) ............................................................ 17

*United States v. Jackson,*
   7 F.4th 261 (5th Cir. 2021) .............................................................. 16

*United States v. Johnson,*
   956 F.3d 740 (5th Cir. 2020) ............................................................ 16

*United States v. Jones,*
   565 U.S. 400 (2012) ........................................................................ 21

*United States v. Lopez–Velasquez,*
   526 F.3d 804 (5th Cir.2008) ............................................................ 13

*United States v. Perez-Gorda,*
   115 F.4th 653 (5th Cir. 2024) .......................................................... 17

*United States v. Vargas-Soto,*
   35 F.4th 979 (5th Cir. 2022) ............................................................ 12

*United States v. Whitelaw,*
   580 F.3d 256 (5th Cir. 2009) ............................................................ 13

*United States v. Williams,*
   504 U.S. 36 (1992) .......................................................................... 12

*United States v. Williams,*
   847 F.3d 251 (5th Cir. 2017) ............................................................ 14

*United States v. Wilson,*
   306 F. App'x 871 (5th Cir. 2009) ...................................................... 13

## State Cases

*Commonwealth v. Davies,*
   1 Binn. 97 (Penn. 1804) ..................................................................20

*Commonwealth v. Emery,*
   2 Binn. 431 (Penn. 1810) ................................................................20

*Mix v. People,*
   29 Ill. 196 (1862) ............................................................................20

*Morales v. State,*
   357 S.W.3d 1 (Tex. Crim. App. 2011) ......................................... 14, 15

*Sans v. People,*
   3 Gilman 327 (Ill. 1846) .................................................................20

## Federal Statutes

18 U.S.C. § 3231 .................................................................................. 1

18 U.S.C. § 3742 .................................................................................. 1

28 U.S.C. § 1291 .................................................................................. 1

## State Statutes

Tex. Penal Code § 9.31 ........................................................ 13, 14, 15, 16

Texas Penal Code 22.01(b)(8) ................................................................ 4

## Rules

Fed. R. App. P. 4(b)(1)(A)(i) .................................................................. 1

Fed. R. Crim. P. 51(b) .........................................................................19

## Constitutional Provisions

U.S. Const. Amendment V ....................................................................20

U.S. Const. Amendment VI.......................................................... 11, 20, 21

U.S. Const. Article III, § 2, cl. 3 ............................................. 11, 20, 21, 22

**Other Authorities**

Jacob Schuman, *Revocation at the Founding*, 122 Mich. L.
    Rev. 1381 (2024) ..................................................................... 11, 20, 21

*Regina v. Harmer*,
    1859 WL 9677 (U.C. Q.B. 1859) ......................................................... 20

*Rex v. Wiblin*, 2 Car. & P. 9 n. 2 (1825) ................................................... 20

## STATEMENT OF JURISDICTION

This is a direct appeal from a sentence imposed in a criminal case. The district court had jurisdiction under 18 U.S.C. § 3231. This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

The district court entered its judgment on September 4, 2025. ROA.104-06. Moses filed a timely notice of appeal the following day. ROA.107. *See* Fed. R. App. P. 4(b)(1)(A)(i).

.

## ISSUE PRESENTED FOR REVIEW

1.    Did the district court plainly and reversibly err by imposing on Moses a duty to retreat before engaging in self-defense?

2.    Whether Moses has a constitutional right for a jury to decide whether he committed a new crime, thereby violating his supervised release?

## STATEMENT OF THE CASE

On July 27, 2022, Norman Terry Moses was sentenced by the district court to 46 months imprisonment and three years of supervised release for illegal receipt of a firearm. ROA.64-66. His conditions of release included: Mandatory Condition No. 1, to not commit another federal, state or local crime; Mandatory Condition No. 2, to not unlawfully possess a controlled substance; and Mandatory Condition No. 3, to refrain from any unlawful use of a controlled substance. ROA.66. The district court also ordered two Special Conditions, which mandated drug and mental health treatment, respectively. ROA.68. Moses began his term of supervised release on December 5, 2024. ROA.75.

## I. Moses struggled to comply with his conditions of release.

Moses encountered difficulties from the outset. From his release until his arrest on May 21, 2025, Moses submitted nine positive drug tests, failed to report for drug testing four times, failed to report for dual disorder treatment four times, and failed to participate in a psychiatric evaluation four times. ROA.78-81, 149-50. In addition, Moses was arrested on March 23, 2025, and he was the subject of a police complaint on April 1, 2025. ROA.75-77. Even so, U.S. Probation did not seek revocation until

Moses's arrest and subsequent release on bond for events that occurred on May 21, 2025. ROA.75-83.

## II.  U.S. Probation sought to revoke Moses after he was arrested on May 21, 2025, for an alleged assault against his sister.

According to Probation's petition to revoke, on May 21, 2025, Moses committed an unlawful assault against his sister "in violation of a Texas Penal Code 22.01(b)(8), a 3rd degree felony." ROA.77-78. The incident occurred at Moses's and his sister's residence. ROA.77, 81, 158. *See also* ROA.254, Judgment in a Criminal Case Personal Identification Attachment, Sept. 4, 2025, ECF 71 [sealed]. The Dallas Police Department incident report recounted that Moses arrived at the apartment after his sister told him "to come get his children." ROA.77. Moses and his sister "started arguing," and his sister "tried to get Mr. Moses to leave." ROA.77. "Mr. Moses reportedly became agitated" according to the petition, and "then grabbed the complainant [his sister] by the head with both hands and began hitting her multiple times against the door jam." ROA.77. "The complainant reported he grabbed her hair to hold her and ripped her hair out." ROA.78. Again, according to the petition, "[t]he complainant…went to fight back by scratching his face and hitting Mr. Moses in the face with the door lock to get him off her." ROA.78.

4

Moses disputed this account with one of the responding officers. ROA.78. According to Moses, "the complainant was placing his children's clothing outside, and then lunged at him and grabbed his hair." ROA.78. "He reported the scratches and cut on his face and forehead came from the complainant hitting him." ROA.78.

Probation alleged that Moses violated Mandatory Condition No. 1 under Heading III of its petition. ROA.77-78. Under Headings I and II, Probation also alleged violations related to the March arrest and the April report to law enforcement. ROA.75-77. And Probation detailed the missed and failed drug tests, the missed treatment sessions, and the missed psychiatric evaluations under Headings IV, V, and VI. ROA.78-81. Probation alleged that these technical violations violated Mandatory Condition No. 2 and the Special Conditions of Moses's term of supervised release. ROA.78-80. The district court issued a violator's arrest warrant. ROA.83.

### III.  Moses disputed the unlawful assault, and he invoked his right to a jury trial on the question.

The court held the revocation hearing on July 24, 2025. ROA.135. The government abandoned the alleged violations at Headings I and II at the

outset of the hearing. ROA.146-47. And Moses pleaded true to the violations of Mandatory Condition No. 2 and the Special Conditions, outlined in Headings IV, V, and VI in the petition. ROA.149-50. The only issue in dispute, therefore, was whether Moses violated Mandatory Condition No. 1 by committing a new crime. ROA.149-50.

On the eve of the hearing, Moses invoked his right to a jury trial on that question. ROA.96-102. The district court denied the request as untimely. ROA.141. Even so, the district court made clear it "would overrule it, if I didn't strike it procedurally." ROA.142. The court then proceeded to adjudicate whether a violation occurred. ROA.150-212.

## IV. The court conducted the factfinding and found that Moses violated solely because he failed to retreat from his home.

As proof of the crime, the government relied on ten exhibits and Officer Riddle's testimony, who was one of the responding officers on May 21, 2025. ROA.77, 150-201. The court first admitted Moses's sister's 911 call over the defense's due process objection. ROA.150-54. Then the court heard Officer Riddle's testimony. ROA.155-201. Officer Riddle testified about her investigation on-scene, her decision to arrest Moses, and his and his sister's injuries. ROA.77, 155-201. Critically, Officer Riddle admitted:

6

(1) she had to make an arrest because of the outcry of family violence, and Moses consented to being the one arrested, ROA.175.

(2) she did not interview witnesses on scene who exclaimed upon officers' arrival that Moses's sister was cutting Moses's face and that they broke up the fight, ROA.187-88, 200;

(3) Moses's sister provided inconsistent statements about whether she had caused Moses any injuries, ROA.191-94; and

(4) Moses's sister had struck Moses on the head with the door jam or latch of the front door and gashed open his forehead, ROA.194, 197-98, 236-37.

As for the parties' injuries, Officer Riddle testified that Moses's sister had hair missing from her head and scratch marks. ROA.162-69. Moses, on the other hand, had a gash across his forehead. ROA.190-91, 197-98, 23-37. The court also heard evidence that Moses's sister had a criminal record, which included "theft, robbery convictions, burglary of a vehicle convictions, criminal trespass conviction, another theft conviction from 2015," as well as an "assaultive history" and "domestic violence-related arrests." ROA.206.

Before announcing the findings on the contested violation, the court heard argument from both parties and Moses's allocution. ROA.201-10. The government urged the district court to find that Moses violated his

conditions of release because, even if he had acted in self-defense, the force must be "a reasonable amount of force." ROA.203. Moses, in turn, highlighted his sister's lack of credibility—and the fact that he was denied the opportunity to cross-examine her—as well as Officer Riddle's incomplete investigation. ROA.204-07.

The court found that Moses "made a good point on the evidence." ROA.212. The court accepted "that the first person to act was the victim, who we have been calling the victim in this case, the sister." ROA.212. *See also* ROA.213 ("I think you made good points, Mr. Monthie, on her being the first aggressor. I'm crediting it. I'm looking at her criminal history, right? And so I'm assuming she was the initial aggressor."); ROA.216 ("I get it, the fact that she started first"), ROA.217 ("I do get that she went first"). The court also found that Moses "reasonably believe[d] the force [wa]s immediately necessary to protect [himself]." ROA.211-12. But the court found that Moses used an unreasonable amount of force in response. ROA.211-13.

> The easiest thing to stop the use of force with the lock, the lock had a chain on it, is to back out one foot and then you are out of the reach of it. And so I think because of the position and the lock being chained, I think it was excessive force used to defend himself.

ROA.212. Again, the door jam used to cut Moses's face was at the front door. ROA.237. Thus, if the force used was excessive because Moses should have "back[ed] out," then the court found that Moses engaged in an unreasonable amount of force simply because he failed to retreat from his home.

## V.    The court sentenced Moses to 20 months because of the May 21, 2025 incident.

The court thus found that Moses violated his supervised release as alleged in Headings III, IV, V, and VI in the petition. ROA.211-12. According to the petition, these violations produced a policy statement range of 30–37 months, reduced to 24 months because of the statutory maximum. ROA.82-83. Neither party disputed these calculations. ROA.147. The court sentenced Moses to 20 months imprisonment and no further supervised release. ROA.213. And it continuously referred to the May 21, 2025, incident to explain its sentence. ROA.213-16.

To start, the court noted that "this is actually the first case where I have had someone use force on supervised release and I haven't gone to the top of the statute." ROA.213. True, Moses's sister attacked first. ROA.213. But, the court explained, it found that Moses failed to retreat—

so the court selected 20 months instead of the statutory maximum. ROA.213.

Moses objected vigorously to the sentence, prompting more back and forth with the court. ROA.214-16. The court repeated: "I would have gone to the maximum 24 months…but I get it, the fact that she started first." ROA.216. The court "went to 20 months instead of 24" only because "she went first." ROA.217-18. "[T]he violent act…concerns me the most," the court point-blank stated. ROA.217. It selected its sentence for its deterrent value given the circumstances of the violation. ROA.217. Moses timely appealed. ROA.107.

## SUMMARY OF THE ARGUMENT

*First*, the district court plainly and reversibly erred by finding that Moses did not engage in self-defense solely because Moses failed to retreat from his home. This reasoning clearly contravenes the statutory prohibition of a duty to a retreat. Further, the error affected Moses's substantial rights because it motivated the court's selection of a 20-month revocation sentence. Lastly, the error risks unnecessary jail time, arose from court error, and is relatively easy to correct.

*Second*, Moses was denied his right to a jury trial on whether he committed a crime and thus violated his conditions of release. At the Founding, the jury trial right attached to forfeiture of recognizance, the founding-era version of contemporary supervised release revocation proceedings. *See* Jacob Schuman, *Revocation at the Founding*, 122 Mich. L. Rev. 1381, 1384 (2024). When the Founders ratified the jury trial guarantees of Article III, Section 2 and the Sixth Amendment, therefore, they likely intended to provide a right to jury trial in revocation proceedings like Moses's revocation hearing below. Even so, Moses acknowledges that the Court decided this issue against him in *United States v. Hinson*, 429 F.3d

11

114, 116–19 (5th Cir. 2005). He raises it here to protect his rights on further review and in postconviction proceedings. *See United States v. Williams*, 504 U.S. 36, 41 (1992) (Supreme Court's "traditional rule…precludes a grant of certiorari" "when the question presented was not pressed or passed upon below"); *United States v. Vargas-Soto*, 35 F.4th 979, 993–99 (5th Cir. 2022) (quoting *United States v. Garza-De La Cruz*, 16 F.4th 1213, 1215 (5th Cir. 2021) (concurring op.)) (28 U.S.C. § 2255 petitioner could not show cause to excuse procedural default based on futility of raising legal argument on direct appeal because petitioner "should've 'litigate[d] in anticipation of…legal change'").

12

## ARGUMENT

**I.    The district court plainly and reversibly erred by imposing a duty to retreat on Moses.**

The district court plainly and reversibly erred by imposing a duty to retreat on Moses when the controlling provisions of Texas Penal Code § 9.31(e) and (f) prohibited any such duty. This clear and obvious error affected Moses's substantial rights by fully rebutting the court's reasoning on whether a violation occurred and by undermining the driving consideration in the court's selection of sentence following revocation. Correction is therefore warranted to redress the deprivation of liberty and protect the fairness, integrity and public reputation of judicial proceedings.

### A.    Plain-error review applies.

Moses did not object under Texas Penal Code § 9.31(e) and (f), so this Court will "review the revocation of supervised release under the plain error standard." *United States v. Wilson*, 306 F. App'x 871, 874 (5th Cir. 2009) (citing *United States v. Lopez–Velasquez*, 526 F.3d 804, 806 (5th Cir.2008)). Moses accordingly "must show an error that is clear or obvious and affects his substantial rights." *United States v. Whitelaw*, 580 F.3d 256, 260 (5th Cir. 2009). "When those elements are shown, this court has

13

the discretion to correct the error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Williams*, 847 F.3d 251, 254 (5th Cir. 2017) (quoting *United States v. Diaz*, 637 F.3d 592, 601 (5th Cir. 2011)).

**B.    The district court erred by imposing on Moses a duty to retreat contrary to Tex. Penal Code § 9.31(e) & (f).**

In Texas, "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." Tex. Penal Code § 9.31(a). Whether Moses violated his conditions of release or engaged in "self-defense to ward off someone else's use of force," therefore, depends on the application of § 9.31. *See* ROA.211 ("I think the defense we are probably looking at here is Section 931 of the Texas Penal Code."). The district court ultimately found that Moses could not invoke § 9.31 because "his use of force to respond was disproportion estimate [*sic*] and was unreasonable." ROA.213. But the district court erred on how it got there.

"Before 2007," Texas "imposed a requirement that 'a reasonable person in the actor's situation would not have retreated'" in order to invoke self-defense. *Morales v. State*, 357 S.W.3d 1, 4 (Tex. Crim. App. 2011)

14

(quoting Tex. Penal Code § 9.32(a)(2) (West 2006)). "But this retreat provision was deleted in 2007." *Id.* at 4–5 (citing Tex. Penal Code § 9.32(a); Acts 2007, 80th Leg., ch. 1, § 3, eff. Sept. 1, 2007.). Now, the text of the statute precludes the imposition of any duty to retreat when "a person who has a right to be present at the location where the force is used, who has not provoked the person against whom the force is used, and who is not engaged in criminal activity at the time" uses force in self-defense. Tex. Penal Code § 9.31(e). In short, "a finder of fact *may not consider* whether the actor failed to retreat" in determining whether such a person "reasonably believed that the use of force was necessary[.]" Tex. Penal Code § 9.31(f) (emphasis added).

The record supports that Moses resided in his sister's apartment, and that the incident occurred there. ROA.77, 81, 158. *See also* ROA.254, Judgment in a Criminal Case Personal Identification Attachment, Sept. 4, 2025, ECF 71 [sealed]. Thus, the evidence before the court was that the incident occurred at Moses's home. Further, the district court credited that Moses's sister was "the first aggressor" below. ROA.213; *see also* ROA.216–17. Still, the court found that Moses used a disproportionate and unreasonable amount because "[t]he easiest thing to stop the use of

15

force with the lock, the lock had a chain on it, is to *back out one foot* and then you are out of the reach of it." ROA.212 (emphasis added). The lock used to harm Moses, however, had been attached to the front door. ROA.191, 232, 237. Concluding that Moses used an unreasonable amount of force because he should have backed out, therefore, requires Moses to retreat from his home in order to claim self-defense under § 9.31.

Imposing a duty to retreat on Moses from his home, when his sister attacked first, and when there was no evidence that Moses was engaged in criminal conduct at the time, clearly contravenes Tex. Penal Code § 9.31(e) and (f). *United States v. Johnson*, 956 F.3d 740, 746 (5th Cir. 2020) (quoting *United States v. Aderholt*, 87 F.3d 740, 744 (5th Cir. 1996)) ("In some circumstances, an error is 'evident from a plain reading of the statute and thus is obvious.'"); *United States v. Jackson*, 7 F.4th 261, 263 (5th Cir. 2021) ("the error was clear or obvious because the plain terms of the…statute establish[ed]" the error). The evidence triggered the statutory prohibition against the duty to retreat, and the court clearly and

16

obviously erred by hinging its ultimate analysis on the self-defense question by imposing the very duty prohibited by statute.[1]

### C.    The error affected Moses's substantial rights.

To show an effect on substantial rights, Moses need only show "a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *United States v. Perez-Gorda*, 115 F.4th 653, 656 (5th Cir. 2024) (quoting *Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016)). "The probability of a different result must be sufficient to undermine confidence in the outcome of the proceedings." *United States v. Gonzalez-Rodriguez*, 621 F.3d 354, 363 (5th Cir. 2010). The district court's statements at the hearing suffice for this showing. *See United States v. Hatley*, 717 F. App'x 457, 466 (5th Cir. 2018) ("We must rely on the statements made by the district court."); *United States v. Hott*, 866 F.3d 618, 621 (5th Cir. 2017) (quoting *United States v. Castro-Alfonso*, 841 F.3d 292, 298 (5th Cir. 2016)) ("We take the district court at its clear and plain word.").

---

[1] The district court should have at least considered § 9.31(e) and (f) before treating the failure to retreat as dispositive.

The district court explicitly stated that the failure to retreat was the linchpin of its self-defense analysis and ultimate finding of a violation of Mandatory Condition No. 1. ROA.212. And the district court was clear that despite all the other violations it found, *this* violation drove its sentencing decision. ROA.213, 216-18. The district court's own words make explicit that "the violent act" "concern[ed] [the court] the most" and is the reason "why [the court] went to 20 months[.]" ROA.217-18. The record severely undermines any confidence that the court would have selected the 20-month revocation sentence absent the error.

## D.    The error warrants correction.

The Supreme Court has warned that "[t]he risk of unnecessary deprivation of liberty particularly undermines the fairness, integrity, or public reputation of judicial proceedings in the context of a plain Guidelines error because of the role the district court plays in calculating the range and the relative ease of correcting the error." *Rosales-Mireles v. United States*, 585 U.S. 129, 140 (2018). The court's error implicates the same considerations here, and it is equally "eas[y]" to correct. *Id.* "Unlike cases where trial strategies, in retrospect, might be criticized for leading to a harsher sentence," this error "ultimately result[ed] from judicial error."

18

*Id.* Correction also requires a proceeding almost identical to a "resentencing," which the Supreme Court has described as "a brief event, normally taking less than a day and requiring the attendance of only the defendant, counsel, and court personnel." *Id.* The Court should exercise its discretion and remand the case for a new hearing.

## II.    The district court erroneously denied Moses a jury trial.

The U.S. Constitution's jury trial provisions apply to supervised release revocations, particularly when a new crime is alleged, based on historical practices and original constitutional understanding. Respectfully, *United States v. Hinson*, 429 F.3d 114 (5th Cir. 2005), which held that defendants in supervised release revocations do not have this right, conflicts with this originalist interpretation. Because a lawyer's duty includes advocating positions that have an arguable basis, even if contrary authority exists, Moses persists that *Hinson* was wrongly decided. *United States v. Cavin*, 39 F.3d 1299, 1308 (5th Cir. 1994)).

### A.    De novo review applies.

Moses invoked his right to a jury trial below. ROA.96-102. The district court struck his request on procedural grounds. ROA.141. Even so, the court noted that it would have denied the jury request on the merits if properly presented. ROA.141-42. Moses thus preserved the error. Fed. R.

Crim. P. 51(b). De novo review applies. *United States v. Guidry*, 456 F.3d 493, 506 (5th Cir. 2006).

### B.    Moses was entitled to a jury trial on whether he committed a crime.

The district court decided on its own whether Moses committed an unjustifiable assault of his sister. ROA.211-12. This infringed on Moses's constitutional right to a jury determination on this issue.

The U.S. Constitution guarantees a trial by jury for criminal punishment. *See* U.S. Const. art. III, § 2, cl. 3, amend. V, amend. VI. At the Founding, this right historically extended to forfeiture of recognizance. *See* Jacob Schuman, *Revocation at the Founding*, 122 Mich. L. Rev. 1381, 1417–18, 1407 (2024).[2] Forfeiture of recognizance proceedings are akin to today's supervised release revocation proceedings. At the Founding, judges often ordered criminal defendants to abide by certain conditions before or after their sentences, and they could order payment of a debt on

---

[2] Court opinions from both sides of the Atlantic reflect the right. *See Mix v. People*, 29 Ill. 196, 197–98 (1862); *Regina v. Harmer*, 1859 WL 9677 (U.C. Q.B. 1859); *Sans v. People*, 3 Gilman 327, 329 (Ill. 1846); *Rex v. Wiblin*, 2 Car. & P. 9 n. 2 (1825); *Commonwealth v. Emery*, 2 Binn. 431, 433–35 (Penn. 1810); *Commonwealth v. Davies*, 1 Binn. 97, 99–100 (Penn. 1804). So do first-hand historical records and treatises. *See* Schuman, *Revocation at the Founding*, 122 Mich. L. Rev. at 1419–1422.

evidence of a violation. *See* Schuman, *Revocation at the Founding*, 122 Mich. L. Rev. at 1384, 1407 (citing Lawrence M. Friedman, Crime & Punishment in Am. History at 38 (1993); 4 Blackstone, Commentaries on the Laws of England at 250–251)). This was called "recognizance," and the violations of the conditions were called "forfeiture of recognizance." 4 Blackstone, Commentaries on the Laws of England at 251, 341. Like supervised release violations, failure to pay the debt could result in incarceration. *See* Schuman, *Revocation at the Founding*, 122 Mich. L. Rev. at 1415–1416.

If the jury right historically attached to forfeiture of recognize, then the Framers and ratifiers would have understood the right to attach to today's analogous revocation proceedings. *See New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 28 (2022) (citing *United States v. Jones*, 565 U.S. 400, 404–05 (2012), and *Caetano v. Massachusetts*, 577 U.S. 411, 411–12 (2016)). True, a revocation of supervised release for a new crime may not be "a criminal prosecution" within the meaning of the Sixth Amendment. *Cf. Morrissey v. Brewer*, 408 U.S. 471, 480 (1972) ("revocation of parole is not part of a criminal prosecution"). But the plain text of Article III, Section 2 nonetheless mandates a jury trial when a

new crime is alleged as a violation.[3] Again, Article III, Section 2, calls for a jury in "the Trial of All Crimes." Surely this text encompasses proceedings where the factfinder determines whether the defendant committed an offense proscribed by state or federal statute that carries the penalty of imprisonment. At least when the government seeks revocation by alleging that the defendant committed a crime, the revocation proceeding becomes a "Trial of [a] Crime[]" within the meaning of Article III, Section 2, and a jury right attaches to that alleged violation.

---

[3] History also supports that Article III, Section 2's jury right applied "[w]henever the general government can be a party against a citizen." Records of the Federal Convention of 1787, p. 163 (M. Farrand ed. 1911) (quoting James Wilson, a drafter of the Constitution and member of the first Supreme Court).

## CONCLUSION

Moses respectfully requests this Court to vacate the judgment of revocation and remand for a new hearing.

Respectfully submitted,

JASON D. HAWKINS
Federal Public Defender
Northern District of Texas

s/ Maria Gabriela Vega
**M. GABRIELA VEGA**
Assistant Federal Public Defender
Texas Bar No. 24084014
525 Griffin St., Ste. 629
Dallas, Texas 75202
Phone 214.767.2746
Fax 214.767.2776
gabriela_vega@fd.org

## CERTIFICATE OF SERVICE

I certify that on January 12, 2026, I filed this brief electronically in the Court's ECF system. Opposing counsel has therefore been served under Fifth Circuit Rule 25.2.5. I also certify that: 1) any required privacy redactions have been made; 2) the electronic submission is an exact copy of the paper document; and 3) this document has been scanned for viruses by Trend Micro Security Agent, a commercial virus scanning program, and it is free of viruses.

*s/ Maria Gabriela Vega*
**M. GABRIELA VEGA**

## CERTIFICATE OF COMPLIANCE

Under Rule 32(a)(7) of the Federal Rules of Appellate Procedure, I certify this brief complies with the length limitation announced in Rule 32(a)(7)(B), because it contains 4,018 words.

This brief complies with the typeface and type style requirements because it has been prepared in Microsoft Word using the proportionally spaced typeface Century Schoolbook, in a 14-point font size in the body of the brief, and a 12-point font size in the footnotes.

I understand that a material misrepresentation in completing this certificate, or circumvention of the length limitations in Federal Rule of Appellate Procedure 32(a)(7), may result in the Court striking the brief and imposing sanctions.

*s/ Maria Gabriela Vega*
**M. GABRIELA VEGA**